Antonio Muñiz, Plaintiff and Appellee, v. Aetna Casualty & Surety Co., Defendant and Appellant.

No. 4441. Argued January 14, 1929.—Decided March 12, 1929.

*Hartzell, Kelly & Hartzell* and *R. O. Fernández* for the appellant. *Buenaventura Esteves* for the appellee.

Mr. Justice Texidor delivered the opinion of the court.

Antonio Muñiz, the appellee, has moved for a reconsideration of our judgment in this case as regards that part of it which reversed the judgment of the district court with reference to the allowance for depreciation in the value of the automobile. (38 P.R.R. 752.)

There are various grounds stated in that motion.

It is alleged in the first place that the basis of our judgment was that it appeared from the pleadings and the evidence that the damages to the automobile were repaired, without any indication that the automobile was not put in good condition, and, on the contrary, it having been proved by the plaintiff that he had the automobile repaired and accepted it after its repair, the rational belief is that it was left in good condition. This was said in the opinion, but it was not the only basis of the judgment nor can it be so understood by anybody who reads the whole opinion without selecting from it the paragraphs which he may think necessary for a fixed purpose.

In treating in the opinion of the pleadings the court made

special reference to that averment of the complaint in the second cause of action which reads:

"*b*. That as he could not induce the defendant to repair the automobile which was greatly needed by the plaintiff, he decided in March of 1926 to have it repaired himself and spent in materials and labor the sum of $91.00."

And immediately follows the allegation of depreciation as a direct result of the accident.

But we find no allegation that after the repairs the automobile was not left in a good condition for the service which it had to render, nor has this been shown by the evidence.

As another ground for reconsideration it is alleged that it appears from the testimony of Ramón Jiménez that "the automobile was repaired, but not as it comes from the factory" and from that of Mamerto Molinary that the value of the automobile is not the same, but it was not possible for an expert to estimate the difference in value between an automobile after the collision and it is repaired, although its value is less because of the collision.

As a ground for reconsideration it is not sufficient to cite isolated parts of testimony heard at the trial and studied and considered as a whole in connection with the other evidence, both at the trial of the case in the court *a quo* and on appeal. Besides, the assertion that after the damage to an automobile has been repaired it is not as it was when it came from the factory is so elemental that it merits no comment and has no influence on the decision. But above all, it should be considered whether or not the defendant was under legal or contractual obligation to deliver the automobile as it was when it came from the factory or without depreciation of its market value. This is the question which we shall consider in the light of the law and of the contract which as between the parties has the force of a law.

In this case there is between the parties an insurance contract made manifest in the policy which was exhibited

and by virtue of which the insurance company responds for the damages caused to the insured automobile by accidental collision; and in conformity with the clause applicable to the case the liability is fixed as follows:

"LOSS OR DIRECT DAMAGE TO THE INSURED AUTOMOBILE CAUSED SOLELY BY ACCIDENTAL COLLISION with another object, excluding, however: (a) All damage caused by the falling or turning over of the described automobile, unless such falling or overturning is the direct result of and immediately follows such accidental collision: (b) all damage caused either directly or indirectly by fire; (c) all damage to any tire provided no other damage is suffered by the automobile. Deduction shall be made from the amount of the damage caused by each collision of the amount stated as liable to be deducted in Clause III, paragraph A.

"In the event of damage to any automobile included within this policy, or its equipment, whether or not such damage is included in this policy, the ultimate liability of the Company by virtue of this agreement shall be reduced by the measure of damages suffered until the completion of the repairs or the replacement of the car, and immediately the whole limit shall be applied, such as originally stated without additional premium.

"In the event of damage or destruction of any of the automobiles covered by this policy, the nature and extent of the damage for which the Company is liable or the value of the automobile destroyed may be determined by the parties hereto, if possible; otherwise, by two appraisers, one to be chosen by the Assured and one by the Company. The two appraisers so chosen, if they are not able to agree, may select a third, and the award in writing of any two of the appraisers shall determine the nature and extent of the repairs to be made at the cost of the Company or the value of the automobile destroyed. The Company and the Assured shall pay the appraiser respectively selected by each, and shall bear equally the other expenses of the appraisal and of the third appraiser, if one is selected. The Company may accomplish any repairs determined by the appraisers by such means as it may elect, or, at the option of the Company, may replace the automobile or pay in money the amount of the loss as fixed by the appraisers. The Assured shall not abandon the damaged automobile and the Company will not be held respon-

288

sible for any part or parts that may be missing from the automobile or its equipment.

"The Company shall have reasonable time and opportunity to examine any damaged automobile or its equipment covered under this policy before repairs are undertaken or physical evidence of the damage removed, but the assured shall not be prejudiced hereunder by any act on his part in his behalf undertaken for the protection or salvage of the damaged automobile or equipment."

In our opinion it is clearly the duty of the insurance company to repair the automobile in case of damage and to replace it in case of total destruction. That is the contract which is binding only according to its terms.

Were it a case of a claim for damages against the person causing them or the person responsible for him, the legal doctrine would not be the same, probably, or at least in the majority of cases.

At the hearing on this reconsideration it was said that we had cited the case of *Broadie* v. *Randall*, 32 L.R.A. 708, or properly 32 A.L.R. 708, and that we were going against the doctrine there stated. This was an error of the party. In speaking of this we said that this is the doctrine upheld in several jurisdictions and in the cases cited by the appellant in *Broadie* v. *Randall, supra,* giving a list of the cases cited by the appellant in *Broadie* v. *Randall*.

The cases specially mentioned in our opinion are *Molina* v. *Porto Rican Lloyd,* 31 P.R.R. 120, and *Martínez* v. *Independence Indemnity Co.,* 36 P.R.R. 775.

The reasons and grounds for our opinion and judgment in the present case remain in full force and should be affirmed now.

For the foregoing reasons, as there are no grounds to support the motion of the appellee another judgment must be rendered in the same form and wording as the one rendered on November 26, 1928, in the same case and based on the same opinion as before.